ADAMS, Justice.
This is an appeal from a summary judgment granted in favor of Academy Life Insurance Company in an action filed by Sally Morrison against Academy Life and Leonard Wright and claiming damages based on an alleged intentional interference with business or contractual relations and slander. Mr. Wright, having filed for bankruptcy, was dismissed from the case, without prejudice. Summary judgment was thereafter entered in favor of Academy Life. We reverse and remand.
The following facts are necessary for a determination in this case:
Leonard Wright was an insurance agent for Academy Life until he lost his license for allegedly making defamatory statements to potential customers at Redstone Arsenal in Huntsville about Sally Morrison, the appellant. Ms. Morrison, at the time the statements were allegedly made, worked for American Fidelity Insurance Company, which competes with Academy Life to sell insurance policies to active and retired military personnel. The testimony of several witnesses indicates that Mr. Wright told them that American Fidelity was bankrupt and that Ms. Morrison was attempting to sell insurance despite the knowledge that American Fidelity could not meet its obligations. He further stated to them that Ms. Morrison was wanted by the F.B.I. for tax evasion; that her house had been repossessed; and that she had disappeared. One witness testified that Mr. Wright, in addition to making these statements, told her that he “wanted to have [Ms. Morrison] arrested because she *1310 was taking other military families and he was there to protect the military families.” Because of his conduct, Mr. Wright lost his license to sell insurance and, as a consequence, Redstone Arsenal barred Academy Life for two years from selling insurance on the premises.
Ms. Morrison filed her suit as a result of these statements made by Wright, alleging that her reputation had been damaged and that at least one customer had switched from American Fidelity to Academy Life as a result of Wright’s conduct. When moving for summary judgment, Academy Life argued that Wright was an independent contractor and that, therefore, Academy Life could not be liable for his conduct while at Redstone Arsenal.
In order to determine whether Ms. Morrison offered substantial evidence to withstand a motion for summary judgment (see § 12-21-12, Code 1975) on the issue of whether Wright was an independent contractor or was an agent or employee of Academy Life, we must consider the facts surrounding Wright’s working relationship with Academy Life, which was somewhat different from the usual relationship an insurance agent has with the company he represents.
On appeal, Academy Life does not contend that no slander or intentional interference with business relations occurred; rather, it argues that it should not be held liable for such conduct under the facts of this case. Academy Life contends that at all times Wright was an independent contractor; that his contract described him as an independent contractor; that the managing personnel considered him to be an independent contractor; and that Wright described himself as an independent contractor. This evidence, Academy Life argues, confirms that indeed Wright was an independent contractor and not an agent or employee of Academy Life. While these things may offer evidence that Wright was an independent contractor, the characterizations of the parties of their relationships is not always determinative of their relationship with one another:
“Because working relationships take a wide variety of forms, each case must depend upon its own facts, and all features of the relationship must be considered together, Sessions [Co. v. Turner,] 493 So.2d 1387 [ (Ala.1986) ]. Thus, whether an agency relationship exists is determined by the facts of the case, not by how the parties characterize their relationship. Federal Land Bank v. Jones, 456 So.2d 1 (Ala.1984).”
Branco Wood Products, Inc. v. C.C. Huxford, Jr. Grandchildren’s Trust, 521 So.2d 73, 74 (Ala.Civ.App.1988).
The record reveals that Wright began working for Academy Life in 1980 and that his license was revoked in 1982 for the following reasons (this revocation in 1982 was not related to the alleged action that is the subject of this present action):
“1. In the exercise of his insurance license[, he misrepresented] terms or conditions of insurance policies of contract;
“2. In the exercise of his insurance license [he demonstrated] a lack of trustworthiness or competence to act as an insurance agent;
“3. In the exercise of his insurance license [he] completed an unfair, incomplete and inaccurate comparison between two insurance policies and made, issued, or caused to be made or issued statements misrepresenting or making incomplete comparisons regarding the terms or conditions of an insurance policy for the purpose of inducing or attempting to induce, the owner of said policy to forfeit, cancel or surrender such contract or policy or to allow it to lapse for the purpose of replacing such contract with another.”
State of Alabama Department of Insurance, order revoking license no. L-82-01S, April 1, 1982. Academy Life provided counsel for Wright in order to contest the loss of his license; however, the decision to revoke Wright’s license was upheld by the Montgomery County Circuit Court. In 1983, Academy Life wrote to the commissioner of insurance, stating:
“The company [Academy Life] has investigated and hereby endorses the applicant [Wright] as an individual of good business standing and character.... *1311 This report will be furnished to the Commissioner of Insurance upon request.”
At a subsequent meeting, Academy Life requested the Department of Insurance to reinstate Wright and assured the Department that the company would supervise and control his activities. Wright was reinstated, conditioned on the completion of a 40-hour course, paying the fee for and passing the insurance examination, and the personal review of all insurance applications submitted by Wright by Wright’s supervisor at Academy Life.
In 1988, in order to obtain the right to solicit customers at Redstone Arsenal, Academy Life sent to the commanding officer there a letter that stated in pertinent part:
“The company assumes full responsibility for compliance by its agents with Regulation 210-7 and with any Regulations published by the installation commander relating to the solicitation and sale of commercial life insurance on [the] military installation.”
While soliciting customers at Redstone Arsenal, Wright allegedly made the statements about Ms. Morrison. We conclude that Morrison has offered substantial evidence to warrant submission of the issues of Wright’s working relationship with Academy Life to a jury. There was evidence that Academy Life knew of Wright’s propensity to act in a manner unacceptable to the insurance profession, yet, on more than one occasion, stood up for Wright and volunteered to supervise his work so that he could continue to sell insurance. Academy Life sent Wright to training sessions for instruction on how to sell its insurance and provided him with monthly reports, weekly reports, rate books, managing books, charts, supervisors’ handbooks, sales cards, application forms, and sales literature. Furthermore, Academy Life took “full responsibility” for Wright’s actions at Redstone Arsenal, where the alleged incidents took place. With regard to the question of control, we have stated:
“The test to be used in determining such relationship is whether [the alleged master] had a reserved right of control over the means and agencies by which the work was done or the result produced, not the actual exercise of such control. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608 (1937). From this test, one may seek to ascertain whether the relation between the parties is that of an independent contractor, or of an employer-employee or master-servant. Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757 (1939).
“In examining the cases on this issue, [we find it] apparent that the courts have held one to be an employer when he has reserved some power of control over the one he asserts is an independent contractor.”
Sawyer v. Chevron U.S.A., Inc., 421 So.2d 1263, 1264 (Ala.1982). We find that Morrison has offered sufficient evidence for a jury to consider whether Academy Life retained control of Wright’s activities.
Because Morrison has also offered sufficient evidence that the alleged slander and interference with business or contractual relations occurred in the line and scope of Wright’s employment, we find that the trial court erred in entering the summary judgment for Academy Life.
For the foregoing reasons, the judgment is hereby reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.